# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

―――――――――――

Nº 04-CV-5246 (JFB)

―――――――――――

LARRY JOHNSON,

Petitioner,

VERSUS

WILLIAM P. MAZZUCA,
Superintendent, Fishkill Correctional Facility

Respondent.

―――――――――――

MEMORANDUM AND ORDER
August 16, 2006

―――――――――――

JOSEPH F. BIANCO, District Judge:

*Pro se* petitioner Larry Johnson ("Johnson") seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Johnson was convicted in a judgment rendered on May 11, 1999, following a jury trial, in County Court, Suffolk County, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. He was sentenced to an indeterminate term of 10 to 20 years' imprisonment.

Johnson challenges his conviction on the following grounds: (1) he was denied a fair trial when the court allowed testimony from law enforcement officers about the procedures of buy/bust operations and the *modus operandi* of drug sellers; (2) he was denied effective assistance of appellate counsel because, among other things, his appellate counsel failed to argue an alleged violation of the trial court's pre-trial ruling and failed to adequately argue his agency defense. For the reasons set forth below, the petition is denied.

## I. BACKGROUND

### A. The Facts

The following is a summary of the facts adduced at Johnson's trial.

On November 6, 1998, Detective Vincent Alese, who was an undercover officer (hereinafter "UC") with the Suffolk County

Police Street Enforcement Unit, was posing as a drug purchaser for a buy/bust operation in the area of Bay Shore, Suffolk County. (Tr. 40, 46.)[1] Alese was working alone and had a tape recorder, two-way transmitter, and a one-way transmitter hidden in his car. (Tr. 46, 48, 63, 103.) Alese drove around the area and had conversations with three or four people before pulling over and parking on Brook Avenue and North First Street at about 10 p.m. (Tr. 48, 51, 85.) Johnson, who was walking on the street, nodded to Alese and approached the vehicle. (Tr. 52.) Alese asked Johnson if Tina was out. (Tr. 105.) Alese chose that name because he knew that Tina had been picked up in that area as a drug peddler the prior week and was unavailable that night. (Tr. 88-89.) After Alese asked Johnson if he was working, Johnson inquired as to what Alese needed. (Tr. 52, 92.) Alese asked for "One 20." (Tr. 52.) Johnson told Alese to shut off his vehicle and Johnson then walked away to an area out of Alese's view. (Tr. 51-52.)

Shortly thereafter, Johnson returned and got into Alese's vehicle. (Tr. 53.) Johnson then directed Alese to drive to Union Boulevard where they parked. (Tr. 53-54.) After parking, Johnson asked Alese for the $20 up front. (Tr. 54.) Alese provided the money, but asked for something with Johnson's name on it as collateral in return. (Tr. 54-55.) In response to that request, Johnson handed Alese property receipts that contained both Johnson's name and signature, which Johnson had received from the Suffolk County Jail in connection with a prior arrest and incarceration. (Ex. 2; Tr. 54-59.) Johnson then exited the vehicle and walked

out of Alese's sight. (Tr. 60, 93-94.) Johnson returned a short time later and told Alese that he had to go to Silky's because Petey did not have anything. (Tr. 60, 95.) Again, at Johnson's instructions, they drove to the parking lot of Nippy's Nursery at Union Boulevard and Lakeview. (Tr. 60-61.) Johnson then entered a house on Lakeview, in which Alese observed that there were at least two people. (Tr. 61-62, 95-96.) While he waited for Johnson to return, Alese directed the backup team on the one-way transmitter as to how they would arrest Johnson. (Tr. 75, 98.) Johnson subsequently exited the house and returned to Alese's car. (Tr. 62.) Johnson then handed Alese crack cocaine and Alese returned Johnson's collateral. (Tr. 60-62, 75.) Johnson told Alese that he did not chip any crack cocaine off for himself. (Tr. 63, 96.)

Although Alese led Johnson to believe he was taking him back to their meeting point, Alese headed to a pre-arranged location on Pennataquit Avenue, where the backup planned to pull the car over. When the backup team attempted to pull the car over, Johnson wanted Alese to get rid of the crack. Alese then palmed the package and told Johnson that he had swallowed the crack. When Alese and Johnson exited the vehicle, the backup team falsely stated that they saw cocaine on the front seat and arrested Alese and Johnson. (Tr. 77, 99-100, 115-17.)

In addition to Alese, two members of the arrest team – Sergeant William Bundrick and Detective Michael O'Conner – testified about the arrest. Bundrick testified that, after Alese gave the arrest signal, Bundrick arranged for the takedown. When he arrived at the arrest scene, he saw Johnson in the front passenger seat of Alese's vehicle. (Tr. 137-39.) O'Conner testified that, after he pulled over Alese's vehicle on Pennataquit, he opened the

---

[1] References to "Tr." are to pages of the trial transcript and references to "Ex." are to trial exhibits.

passenger door of Alese's vehicle, identified himself to the passenger, asked that they step out of the car, and then arrested the passenger. O'Connor identified Johnson as the passenger. (Tr. 141-45.) The tape-recording of the undercover transaction between Alese and Johnson also was admitted into evidence. (Tr. 64-78; Ex. 3 and 4.)

## B. Procedural History

Johnson was charged with one count of criminal sale of a controlled substance in the third degree (N.Y. PENAL LAW § 220.39) and one count of criminal possession of a controlled substance in the third degree (N.Y. PENAL LAW § 220.16). After a jury trial, Johnson was found guilty as charged on both counts, which are class "B" felonies. On May 11, 1999, Johnson was sentenced, as a prior felony offender, to two concurrent indeterminate terms of ten to twenty years' imprisonment.

On February 22, 2000, Johnson brought a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") section 440.10 on the following grounds: (1) the evidence before the grand jury was insufficient; (2) the evidence before the trial court was insufficient; (3) the trial court erred in admitting testimony concerning Johnson's prior convictions; (4) the trial court erred in allowing, as background evidence, testimony concerning the modus operandi of street level narcotics dealers; and (5) prosecutorial misconduct occurred when the prosecutor used testimony that was known to be false. That application was denied on August 31, 2000.

By Order of the New York Supreme Court, Appellate Division, Second Department ("Second Department"), counsel

was assigned *in forma pauperis* to pursue an appeal. On appeal, Johnson's counsel raised the following claims: (1) the trial court deprived the appellant of a fair trial by improperly permitting the introduction of background testimony regarding "buy and bust" operations, including statistical evidence, to prove Johnson's criminal conduct in the instant case; (2) Johnson's sentence was harsh and excessive; (3) the trial court deprived Johnson of a fair trial by improperly allowing the introduction of evidence showing that Johnson had been incarcerated just prior to his arrest on the charged offense; and (4) the prosecution failed to disprove beyond a reasonable doubt that Johnson was acting as an agent for the police officer who had purchased the controlled substance.

On December 30, 2002, the Second Department unanimously affirmed his conviction. *People v. Johnson*, 753 N.Y.S.2d 91 (App. Div. 2002). On March 14, 2003, the New York Court of Appeals denied Johnson's application for leave to appeal. *People v. Johnson*, 99 N.Y.2d 629 (2003). On June 30, 2003, the Court of Appeals rejected Johnson's motion for reconsideration of the denial of leave to appeal. *People v. Johnson*, 100 N.Y.2d 562 (2003).

On November 10, 2003, Johnson also challenged the effectiveness of his appellate counsel in an application for a writ of error *coram nobis.* On February 23, 2004, the Second Department unanimously denied that application. *People v. Johnson*, 771 N.Y.S.2d 712 (App. Div. 2004). On May 19, 2004, the New York Court of Appeals denied Johnson's application for leave to appeal. *People v. Johnson*, 2 N.Y.3d 801 (App. Div. 2004).

By *pro se* application, dated November 2, 2004, Johnson petitioned this Court for a writ

of habeas corpus.

## II. STANDARD OF REVIEW

To determine whether or not a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams,* 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

AEDPA establishes a deferential standard of review – "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)); *accord Earley*, 451 F.3d at 74.

## III. STATE COURT EVIDENTIARY RULING

Johnson argues that he was denied a fair trial when the state court allowed the introduction of testimony by police officers regarding the "buy and bust" operations, as

well as statistical evidence regarding how frequently buy money is recovered after the purchase of drugs by an undercover officer. More specifically, the trial court permitted testimony by Detective Alese concerning the procedures used in a "buy and bust" operation and the roles of various officers in such an operation. (Tr. 41-42.) The trial court also allowed some testimony by Detective Alese and Sergeant Bundrick regarding the various roles that individuals typically occupy in a street-level drug operation. (Tr. 43-46; 132-33.) In addition, there was testimony that buy money is recovered in a "very small percentage" of purchases by undercover officers in "buy and bust" operations. (Tr. 125.)

On appeal, the Appellate Division, Second Department, found that the background testimony as to the "buy and bust" operations was properly admitted. However, with respect to the specific testimony regarding the recovery of buy money in a "very small percentage" of such operations, the Second Department found the admission of such testimony improper, but concluded such error was harmless in light of the "overwhelming evidence of the defendant's guilt." *People v. Johnson*, 753 N.Y.S.2d 91 (App. Div. 2002). As set forth below, Johnson's claim for habeas relief based on this ruling is without merit.

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("habeas corpus relief does not lie for errors of state law") (citations omitted). Instead, for a habeas petitioner to prevail in connection with a claim regarding

an evidentiary error, the petitioner must "show that the error deprived her of a *fundamentally fair* trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("[e]ven erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair* trial'") (quoting *Rosario v. Kuhlman*, 839 F.3d 918, 925 (2d Cir. 1988) (internal quotation marks omitted)). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant") (internal quotation marks omitted). Moreover, the court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d at 181) (internal quotation marks omitted). In making this due process determination, the court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the

constitutional right to a fundamentally fair trial. *Wade v. Mantello*, 333 F.3d 51, 59 n.7 (2d Cir. 2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001).

As a threshold matter, there is no basis to conclude that the trial court's admission of the police officers' testimony, regarding the procedures for a "buy-and-bust" operation, was erroneous under state law. As noted by the Second Department in affirming Johnson's conviction, appellate courts in New York have held that "allowing police officers to give background testimony to explain how so-called 'buy and bust' operations are conducted is proper for the purpose of assisting the jury in understanding the actions of the police which lead to a defendant's arrest, how the officers conduct the actual purchase, and why pre-recorded money is not always recovered." *People v. Clausell*, 223 A.D.2d 598, 598-99, 636 N.Y.S. 823, 824 (App. Div. 1995); *accord People v. Ramos,* 215 A.D.2d 785, 785, 627 N.Y.S.2d 411 (App. Div. 1995); *People v. Hawkins,* 210 A.D.2d 504, 504, 620 N.Y.S.2d 994 (App. Div. 1994); *see also Sierra v. Brunelle*, No. 96-CV-4741, 1998 WL 760336, at *1-2 (E.D.N.Y. Aug. 2, 1998) (finding claim seeking habeas relief based on the admission of background evidence explaining the police's "buy and bust" operations to be "without merit"). However, as the Second Department found, the admission of the UC's additional testimony that drug money is recovered in a "very small percentage" of "buy and bust" cases, was erroneous under state law.

Even though the admission of the statistical evidence regarding the recovery of buy money was erroneous under state law, the Court finds that there is no basis to conclude that the improper admission of that evidence deprived Johnson of his constitutional right to a fair trial.

The evidence of Johnson's guilt was overwhelming in this case based upon, among other things, the testimony of the UC regarding Johnson's participation in the sale of crack cocaine to the UC during a transaction that was tape-recorded. Here, it was clear from the record that Johnson entered the UC's car, took $20 from the UC for the purchase of crack cocaine, returned a short time later with the crack cocaine which he gave to the UC, and was arrested after exiting the UC's car. Given that it was clear that Johnson was obtaining the crack cocaine from a supplier in a house, the absence of the "buy money" on Johnson at the time of his arrest did not, in any way, undermine the prosecution's theory of the case or the overwhelming nature of its proof. In fact, Johnson's primary defense at trial was *not* that he never had the buy money or did not engage in the drug transaction, but rather that he was functioning as an agent of the buyer. In light of the entire record, there is nothing about the erroneous admission of the statistical evidence that rendered Johnson's trial fundamentally unfair. Moreover, even assuming *arguendo* that the other "buy and bust" background evidence also was improperly admitted, this Court's conclusion, regarding the absence of a due process violation in Johnson's trial, would remain unchanged for the reasons set forth above. Granting of the writ is not warranted under these circumstances. Accordingly, Johnson's first claim for relief is denied.

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey,*

469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), for analyzing such claims as to trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). Under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *See Mayo*, 13 F.3d at 533-34; *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751-52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001). Thus, "[r]eviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues." *Jones*, 463 U.S. 745; *accord Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir. 1998).

In the instant case, Johnson's appellate counsel submitted a 20-page brief on appeal in which he presented four separate grounds for appeal in well-reasoned arguments, citing appropriate case law and referencing the record below. Counsel focused on the most promising issues for appeal that were available to Johnson. In fact, with respect to the admission of the testimony regarding the inability of the police to recover buy money in "buy and bust" operations discussed *supra*, counsel was able to successfully persuade the Second Department that the admission of the evidence was improper, although the court concluded that the error was harmless. Moreover, the two issues as to which Johnson asserts appellate counsel was ineffective – namely, (1) a claim alleging improper admission of property receipts indicating Johnson's prior arrest, and (2) a claim of insufficient evidence to disprove Johnson's agency defense – were both raised as separate arguments on appeal and were rejected by the Second Department. As set forth below, although Johnson argues that appellate counsel was constitutionally deficient in failing to adequately brief these two issues, the Court finds Johnson's arguments to be without merit.

A. Admission of Property Receipts

With respect to the admission of the property receipts, Johnson argues that his counsel failed to specifically point out on appeal that the admission of the receipts, which suggested a prior arrest, was contrary to the trial court's pre-trial ruling, pursuant to *People v. Sandoval*, 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974), in which the court allowed use for impeachment purposes of separate prior convictions for attempted sale of a controlled substance and the theft of service. More specifically, Johnson argues that the prosecution failed to

present to the trial court the property receipts relating to his other arrest at the *Sandoval* hearing and obtain a ruling regarding its admissibility.

The Court finds this argument unpersuasive. Point III of the appellate brief, which related to the admission of these property receipts, argued that "[t]he introduction of evidence indicative of the fact that appellant had been incarcerated just prior to his arrest on the instant offense deprived appellant of a fair trial." The brief cited relevant New York State law regarding the limitations on the use of a defendant's past criminal record because of its potentially prejudicial nature. The brief further referenced the portions of the trial record where this document was admitted over defense counsel's objection and argued that the conviction should be reversed because identity was not an issue at trial and it was "extremely prejudicial." Thus, the issue was fully briefed before the appellate court in a concise and coherent manner.

Moreover, counsel's failure to specifically point out that the evidence was not discussed at the pre-trial *Sandoval* ruling does not suggest a constitutionally deficient performance. Johnson's claim that the admission of the property receipts violated the Court's prior *Sandoval* ruling misunderstands the purpose of *Sandoval*. The purpose of a *Sandoval* hearing is to provide the defendant with a prospective ruling on the prosecutor's intended use of a defendant's prior criminal acts for impeachment purposes should the defendant take the stand. *Miller v. Portuondo*, 151 F. Supp. 2d 245, 247 (E.D.N.Y. 2001) (citing *Sandoval*, 34 N.Y.2d at 372). In fact, the trial court began the *Sandoval* hearing in the instant case by noting that "the People wish to be heard with respect

to should the defendant elect to take the stand, which obviously is his right, any prior instance of misconduct, bad acts, whatever, that the People would wish to raise on cross-examine in an attempt to impeach his credibility." (Transcript of March 29, 1999 Proceeding at 2.) Unlike the impeachment evidence discussed at the *Sandoval* hearing, the prosecutor sought to use the property receipts in the case-in-chief, not to cross-examine the defendant. Therefore, the prosecutor's use of that evidence did not implicate *Sandoval* and was not a violation of the trial court's pre-trial ruling.

To the extent that Johnson is attempting to argue that he should have been entitled to a *Ventimiglia* hearing on the property receipts evidence and his appellate counsel was ineffective for not raising that issue on appeal, that argument also fails. Under New York law, a *Ventimiglia* hearing concerns the admissibility of evidence of prior uncharged crimes. *People v. Ventimiglia*, 52 N.Y.2d 350, 355-56, 420 N.E.2d 59, 438 N.Y.S.2d 261 (1981). Appellate counsel's failure to specifically raise the absence of a *Ventimiglia* hearing in connection with his argument that the trial court improperly admitted the property receipts was not constitutionally deficient. As a threshold matter, *Ventimiglia* does not require a formal hearing; rather, it simply requires the prosecution to alert the court and the defendant of the "prior crime" evidence outside the presence of the jury, identify the issue for which it is being offered other than criminal propensity, and allow the defense to articulate why it should not be admitted. *See Ventimiglia*, 52 N.Y.2d at 356. Here, although there was no pre-trial hearing as suggested by *Ventimiglia*, defense counsel was given the opportunity to object at sidebar during the trial prior to the admission of the document into evidence and prior to any

reference by the witness as to the substance of what was contained in the documents. After hearing argument at sidebar, the trial court concluded that the documents could be admitted because it was part of the drug transaction and could also be germane to rebut Johnson's agency defense. (Tr. 56-60.) Therefore, given that the issue was raised and discussed at sidebar prior to the admission of the documents, there was no harm to Johnson by the prosecution's failure to raise this issue pre-trial, as suggested by *Ventimiglia*. *See People v. Marte*, 207 A.D.2d 314, 316, 615 N.Y.S.2d 678 (App. Div. 1994) ("Although the court did not conduct a full *Ventimiglia* hearing, defense counsel was on notice of the nature of the objectionable testimony, having challenged its admission during the course of opening statements.") (citations omitted).

Moreover, even if there was a violation of the procedure suggested by *Ventimiglia*, the failure to raise that argument on appeal did not result in any prejudice because the absence of a *Ventimiglia* hearing would not warrant reversal of a conviction if the appellate court, as is the case here, found that the evidence was properly admitted. *See People v. Pugh*, 236 A.D.2d 810, 812, 653 N.Y.S.2d 994 (App. Div. 1997) ("[b]ecause the probative value of such evidence exceeds its potential for prejudice, 'failure to conduct a *Ventimiglia* hearing does not necessitate reversal.'") (quoting *People v. Sherman*, 156 A.D.2d 889, 891, 550 N.Y.S.2d 109 (App. Div. 1989)); *accord People v. Morris*, 153 A.D.2d 984, 986, 545 N.Y.S.2d 427 (App. Div. 1989). Because the Second Department rejected appellate counsel's argument and found the receipts properly admitted, raising the *Ventimiglia* issue would not have changed

the appellate outcome.[2] Therefore, the failure to raise the issue on appeal was not objectively unreasonable, nor is there any probability that the outcome of the defendant's appeal would have changed. Accordingly, neither prong of the *Strickland* standard has been met, and this ineffective assistance claim is without merit.[3]

## B. The Agency Defense

Johnson also argues that he was denied effective assistance of counsel because, in arguing on appeal that the prosecution failed to meet its burden of disproving that Johnson was an agent of the UC (rather than the

---

[2] Moreover, to the extent that Johnson implicitly also argues that the failure to conduct such a hearing violated his constitutional rights, the right to a *Ventimiglia* hearing is a matter of state law that is not cognizable under habeas review. *See, e.g., Holmes v. Ricks*, 378 F. Supp. 2d 171, 181-82 (W.D.N.Y. 2004); *Pena v. Fischer*, No. 00 Civ. 5984, 2003 WL 1990331, at *10 (S.D.N.Y. Apr. 30, 2003) (citing *Jones v. Artuz*, No. 97-CV-2063 (NG), 2002 WL 31006171, at *9 (E.D.N.Y. Aug. 30, 2002)). Accordingly, wholly apart from any ineffective assistance claim, it cannot form the basis for habeas relief. Similarly, to the extent that Johnson also is seeking to argue that the admission of the evidence was improper apart from his allegations regarding the lack of proper procedure, the Court also rejects that claim. The Court finds that the admission of that evidence was not even error under state law, no less an error of constitutional magnitude under the circumstances of this case.

[3] Petitioner also asserts that, in connection with the admission of the property receipts, there were other arguments that appellate counsel should have advanced on appeal, including prosecutorial misconduct and judicial misconduct because of the alleged violation of the *Sandoval* ruling. These assertions are similarly rejected for the reasons outlined above.

seller), appellate counsel failed to mention that the tape recording of the conversation between the UC was admitted into evidence at trial. According to Johnson, that tape recording provided further support for his position that he was functioning as a buyer for the UC and, therefore, was not guilty of the charged crimes. In particular, Johnson argued the following:

> The tape recording reveals that undercover officer Alese rode around the Bayshore area in Suffolk County asking anyone if they saw Tina, who was a friend, and he was looking for a twenty ("twenty dollar of cocain [sic]"). The tape recorded evidence reveals that the undercover officer introduced himself as a friend of a friend (Tina), when he meet Petitioner just a few feet away from the front door of his home. The undercover officer asked Petitioner to help him locate Tina. Petitioner agreed. It can be said that petitioner and the undercover officer established a relationship in the eight or so minutes they were together discussing a mutual friend. The taped recorded conversation further emphasizes how the undercover officer got Petitioner to purchase the drugs.

(Petition at "Ground Three.") Johnson also generally alleges that his counsel failed to cite controlling and supporting case law on this issue which would have provided a compelling basis for reversal of his conviction. (*Id.* at "Ground Two.")

The Court disagrees. Point IV of the appellate brief set forth the following: "The People failed to disprove beyond a reasonable doubt that appellant was acting as an agent for the police officer." Counsel then cited the

relevant case law regarding the standard of review under New York law for sufficiency of the evidence, as well as the relevant case law setting forth the factors which the court needs to consider when determining whether the prosecution has met its burden of disproving an agency defense. Counsel further argued in the brief that, applying those factors, the evidence established that Johnson was merely acting as an agent of the police in purchasing the drugs, not as an agent of the seller because: (1) the detective initiated the conversation with Johnson regarding the detective's desire to buy drugs; (2) the detective's money was used to buy the drugs in question; (3) there was no evidence that Johnson profited from the transaction; and (4) there was no evidence that Johnson received or was promised any kind of reward, in advance of or subsequent to, this sale of drugs. Counsel cited to relevant portions of the trial record in connection with each of these factors which, he argued, established Johnson was an agent of the buyer. As set forth below, even though the Second Department rejected that argument, counsel presented the issue on appeal in a manner that clearly demonstrated professional and competent appellate advocacy.

Johnson faults counsel for not utilizing the tape recording on appeal. However, that assertion does not, in any way, demonstrate a constitutionally deficient performance. First, the appellate brief's statement of facts summarized the evidence at trial regarding the transaction, noted that "[t]he tape recording of the transaction was admitted into evidence and played for the jury," and cited to the relevant portion of the trial record regarding the tape. (Pet'r App. Brief at 5). Second, although Johnson questions counsel's failure to provide a detailed recitation of the tape including the portion showing that the UC asked Johnson where "Tina" was (whom the

UC knew had been arrested and was unavailable to supply drugs), there was a sound strategic reason for not doing so. Under New York law, one of the factors courts are advised to consider in connection with an agency defense is whether the defendant had any previous relationship with the seller. *People v. Gonzales*, 66 A.D.2d 828, 828, 411 N.Y.S.2d 632 (App. Div. 1978) (citing cases). It is undisputed that, prior to the time that defendant entered the UC's vehicle, there had been no relationship between Johnson and the UC and, therefore, this factor clearly militated in the prosecution's favor. Nevertheless, Johnson believes it would have been effective to focus on this factor and argue, using the tape, that a relationship developed over the eight minutes that he was in the car with the UC because the UC mentioned the name of an individual whom Johnson knew. Instead of making this specific argument, appellate counsel chose to highlight the other factors under New York law, summarized above, which weighed in Johnson's favor. "A lawyer's decision not to pursue a [particular argument] does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *see DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (citing *Strickland*, 466 U.S. at 690-91). There is no basis to second-guess that decision and the Court finds that appellate counsel's presentation of the agency defense issue on appeal was objectively reasonable under *Strickland*.

In any event, there is no basis to conclude that the outcome of the appeal would have been different had counsel taken the approach suggested by Johnson. As the Second Department noted, the prosecution's evidence disproving the agency defense was strong given, among other things, Johnson and the UC were complete strangers prior to the transaction, Johnson immediately understood the request for "One 20" to be for drugs, he directed the officer to another location when he was unable to obtain drugs at the first location, took the officer's pre-recorded buy money to a nearby house, and then returned with a quantity of cocaine. *People v. Johnson,* 300 A.D.2d 677, 753 N.Y.S.2d 91 (App. Div. 2002). Moreover, the Court is required to view the evidence in the light most favorable to the prosecution. *People v. Contes*, 60 N.Y.2d 620, 621, 454 N.E.2d 932, 467 N.Y.S.2d 349 (1983). Thus, based on a review of the record, Johnson has failed to demonstrate that, if appellate counsel had done everything Johnson now suggests, there was a reasonable likelihood that the outcome on appeal would have been different. Accordingly, even if Johnson had satisfied the first prong of *Strickland*, he is unable to satisfy the "prejudice" prong.[4]

_____

[4]   In his reply brief, Johnson also asserts, independent of his ineffective assistance claim, that there was insufficient proof beyond a reasonable doubt to establish that he had the intent to sell and the prosecution failed to disprove his agency defense . For the reasons noted above, the Court finds this argument without merit. A petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted). Moreover, "[i]n evaluating whether the evidence is sufficient, we must 'view[] the evidence in the light most favorable to the prosecution.'" *Einaugler v. Supreme Court of State of New York*, 109 F.3d 836, 839-40 (2d Cir. 1997). Having reviewed the record, the Court finds that the evidence to convict was more than sufficient under this standard and habeas relief on that ground is denied.

## C. Other Claims

In his reply brief, Johnson also raises an ineffective appellate assistance of counsel claim relating to his counsel's failure to raise on appeal the admission of Johnson's prior narcotics conviction. That claim is also without merit. It is well-settled under New York law that, where agency is asserted as a defense at trial, the State may introduce evidence of prior narcotics-related activities on their direct case to demonstrate intent to sell. *See People v. Alvino*, 71 N.Y.2d 233, 245, 519 N.E.2d 808, 525 N.Y.S.2d 7 (1987); *People v. Sierra*, 213 A.D.2d 685, 685, 624 N.Y.S.2d 438 (App. Div. 1995); *People v. Rodriguez*, 193 A.D.2d 705, 706, 598 N.Y.S.2d 48 (App. Div. 1993); *People v. Rosario,* 122 A.D.2d 85, 85, 504 N.Y.S.2d 492 (App. Div. 1985); *see also Goines v. Walker*, No. 97-CV-3512, 2000 WL 976657, at *7 (E.D.N.Y. July 12, 2000) ([A] defendant who raises an agency defense may be impeached with evidence of prior similar crimes."). Here, Johnson pursued an agency defense and, thus, the prior conviction was clearly admissible under state law.[5] Thus, appellate counsel's failure to raise this claim on appeal did not violate *Strickland*. In short, there is no basis for habeas relief as to this claim.

In sum, with respect to all of Johnson's claims of ineffective assistance of appellate counsel, the state appellate court's ruling that Johnson was not denied effective assistance of appellate counsel was not contrary to, nor an unreasonable application of, clearly established federal law that warrants federal habeas relief. Accordingly, those claims are denied.

## V. CONCLUSION

For the foregoing reasons, Johnson's petition for a writ for habeas corpus is DENIED. Because Johnson has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 16, 2006
Central Islip, New York

\* \* \*

The petitioner appeared *pro se*. Counsel for respondent are Thomas J. Spota, Esq., District Attorney and Guy Arcidiacono, Esq., Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901.

---

[5] Moreover, the trial court gave a limiting instruction to the jury when such evidence was admitted, cautioning them to consider it only as to the agency defense. (Tr. 161-62.)